```
UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
      v.                     )
                             )   No. CR-08-0447-DLJ
ANTONIO WATSON               )
                             )
                             )   ORDER
            Defendant.       )
_____)
```

On October 17, 2008, defendant Antonio Watson (Watson) filed a motion to suppress all fruits of a search conducted of him by Oakland police. On November 14, 2008 this Court held a hearing on the matter. Attorney Christine Wong appeared on behalf of the United States and defendant was represented by Attorney Rebecca Silbert. Having reviewed the papers and having heard oral argument on this matter, the Court finds the following.

**I. Factual Background & Procedural History**

The facts herein are summarized from a police report written by OPD Officer Steve Martin. Watson does not offer any evidence in opposition but does not concede the truthfulness of the report.

At approximately 8:18 p.m. on May 14, 2008, two Oakland police officers saw a man, later identified as Watson, walking along 96th Avenue in Oakland in an area known for drug trafficking and gun violence. *See* Police Report, attached as Exhibit A to defendant's Motion to Suppress. The officers decided to contact Watson. *Id.* When the officers drove up to Watson, he looked towards them and reversed the direction in which he was walking. *Id.* Officer Martin got out of the car. He reports that Watson seemed nervous and

anxious "as if he wanted to run but was uncertain in which direction." *Id*.  Watson then made "a furtive movement to his waist band with his left hand." *Id*.  Officer Martin told Watson several times to show his hands, but Watson did not comply. *Id*. Watson then began running from the scene. *Id*.

Officer Martin ran behind Watson, pinned his arms to his side and knocked him to the ground. *Id*.  Martin, along with two other officers, held Watson down, forced his arms behind his back, and handcuffed him. *Id*.

Officer Martin then searched Watson for weapons. *Id*.  No other officer observed or participated in the search. *Id*.  Officer Martin felt a "small bulge" in Watson's pants leg, in the area above his right shoe.  In a subsequently filed declaration, Martin amplifies the information in the police report, explaining that when he felt with the flat of his hand, the object felt to be about one to one and half inches in circumference, ball-like, bumpy and hard.  He further states that based on his training and experience, he "immediately recognized" that the object was crack cocaine.  Martin "shook [defendant's] pant leg," and a cellophane bag containing several "twists" of crack cocaine fell out. *Id*.  Watson was then arrested for possession of cocaine base for sale. *Id*.  Upon further search the officer found that Watson did not have a gun or any other weapon on his person, but that he did have about $200 in various denominations in his front pocket and another $200 in his wallet.

2

*Id.*

Watson was charged with one count of possessing cocaine base with intent to distribute.

## II. Legal Standard

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV. According to the Supreme Court, there are three types of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment, see, e.g. Michigan v. Chesternut, 486 U.S. 567, 574-76 (1988); INS v. Delgado, 466 U.S. 210, 218-219 (1984); (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, see, e.g., United States v. Sokolow. 490 U.S. 1,7 (1989); Terry v. Ohio, 392 U.S. 1,30 (1968); and (3) arrests, the most intrusive of Fourth Amendment seizures, and reasonable only if supported by probable cause. See, e.g., Hayes v. Florida, 470 U.S. 811, 815-16 (1985); Dunaway v. New York, 442 U.S. 200, 212-16 (1979).

However a consensual encounter "may evolve into a situation where the individual's ability to leave dissipates." United States v. Ayarza, 874 F.2d 647, 650 (9th Cir. 1989).

III. **Discussion**

    A.   The Stop

Defendant Watson argues that when the police threw him to the ground and handcuffed him, the encounter became an arrest requiring probable cause. Physical restraint by the police can be an important factor in determining the intrusion effected by the stop. Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996). Defendant asserts that a "reasonable innocent person" being held on the ground and handcuffed by three police officers may not feel free to leave.

Defendant asserts that the police were without justification for their aggressive conduct. When the police first decided to contact Watson, they had no specific information that he was involved in criminal activity. Defendant asserts that while his running may have justified a *Terry* detention stop, it did not justify a handcuffing.

The government counters that the incident with defendant was an investigatory detention under *Terry*, based on reasonable suspicion that "criminal activity may be afoot." The government argues that whether the officer's suspicion is reasonable is measured by an "objective test using the experience of a trained and experienced law enforcement officer." Opp. at P.4 citing United States v. Cortez, 449 U.S. 411, 418 (1981). The government argues that the officer's reasonable suspicion was based on the fact that defendant

was in an area well known for a high volume of narcotic sales and use of weapons; that the defendant appeared nervous and anxious when he saw the police car; that defendant stopped and then made furtive movements to his waist band with his left hand; that when the officers asked defendant to show his hands several times defendant would not do so and that then defendant ran from the scene.

The government argues that these factors were sufficient for the police to conduct a brief investigative stop, and due to defendant's furtive hand motions they were entitled to conduct a brief protective search.  As support for their argument, the government cites to Allen v. City of Los Angeles, 66 F.3d 1052 (9th Cir. 1995), and United States v. Taylor, 716 F.2d 701 (9th Cir. 1983)(initial detention and handcuffing of Pressler justified as a *Terry* stop).

The *Allen* case arose from the infamous Rodney King incident. Plaintiff-appellant Bryant Allen was a passenger in Rodney King's car when it was pulled over by police officers. King had been speeding and failed to obey police directions to stop. During the time King was being beaten, Allen was forced at gunpoint to lie on the ground, was handcuffed, frisked, placed in a police car, and questioned.  Allen sued the police officers under 42 U.S.C. § 1983, claiming they violated his rights under the Fourth Amendment by arresting him without probable cause and using excessive force to effectuate the arrest.

5

Allen argued that his encounter with the police went beyond a permissible *Terry* stop (based on the speeding car's failure to stop when requested by the police) and became an arrest for which probable cause was needed and lacking. In analyzing the correctness of the police actions, the Ninth Circuit stated that police officers "need not avail themselves of the least intrusive means of responding to an exigent situation. The relevant inquiry is always one of reasonableness under the circumstances." Id. (citations omitted). The Ninth Circuit held that "considering all of the circumstances, pointing a gun at Allen, forcing him to lie on the ground, handcuffing him, and detaining him in a police vehicle-all in a period not exceeding 24 minutes was not unreasonable for a *Terry* stop and did not amount to an arrest." Id.

There are similar circumstances here, and the Court finds that looking at the totality of these circumstances, the police effectuated a valid *Terry* stop.

B. The Pat Search

During the protective search, Officer Martin felt an object which he states in his declaration that he immediately recognized, through his training and experience, as packaged crack cocaine. This "touch" in turn gave the officer probable cause to arrest defendant and to shake his pants leg, dislodging the drug packet. See Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993)(If a "police officer lawfully pats down a suspect's outer clothing and feels an

6

object whose contour or mass makes its identity immediately apparent," then the object may be seized without a warrant as if it had been in plain view).

Defendant argues that the drugs were not "immediately apparent" to the Officer Martin.  Although the police officer's declaration submitted as part of the opposition to the motion states that the drugs were "immediately apparent," defendant argues that this assertion is not consistent with the officer's testimony at a preliminary hearing, conducted pursuant to the State charges then pending.

At the preliminary examination in State Court, Officer Martin was asked:

Q. Now, when you first felt this object, did you know what it was or...

A.  I had an inclination of what it was.

Q.  What did you think it was?

A.  I thought it was narcotics.

Preliminary Transcript attached as Exhibit A to Defendant's Reply brief at 15:6-10.

Based on this colloquy, defendant argues that it was insufficient for the officer to "think" that the package was narcotics to meet the level of being "immediately apparent" as required by <u>Dickerson</u>.  The Court does not concur with defendant's analysis of <u>Dickerson</u>.

7

In <u>Dickerson</u>, the Court looked by analogy to "plain-view" doctrine cases to determine if a seizure of evidence in the course of a pat search was valid.  The plain-view doctrine permits police to seize an object without a warrant if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right of access to it. Transferring that logic to the pat search context the Court held that the plain-view doctrine "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search."  The Court held that "if an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" <u>Dickerson</u> at 375.

This does not mean, as defendant argues, that the touch must result in a certainty that the object is drugs.  Nor could it logically, as touching an unseen object may give rise to a reasonable belief as to what the object is, but can not give rise to certainty.

The "immediately apparent" language of the <u>Dickerson</u> case focuses on the word "immediate," contrasting an "immediate" belief about the nature of the object with a belief only reached only after further investigation used to determine the nature of the object.

8

Based on this concern, the Court found the <u>Dickerson</u> search to be unlawful:

> Application of the foregoing principles to the facts of this case demonstrates that the officer who conducted the search was not acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in respondent's jacket was contraband. Under the State Supreme Court's interpretation of the record, the officer never thought that the lump was a weapon, **but did not immediately recognize it as cocaine. Rather, he determined that it was contraband only after he squeezed, slid, and otherwise manipulated the pocket's contents**. While *Terry* entitled him to place his hands on respondent's jacket and to feel the lump in the pocket, his continued exploration of the pocket after he concluded that it contained no weapon was unrelated to the sole justification for the search under *Terry*. Because this further search was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.
> Id. at 377 (Emphasis added)

This focus on "immediately," meaning without further investigation, is amplified in a subsequent Ninth Circuit case. The Ninth Circuit has interpreted *Dickerson* as allowing an officer a "precautionary squeeze" to determine whether an object is a weapon. <u>U.S. v. Mattarolo</u>, 209 F.3d 1153, 1158 (9th Cir. 2000). In *Mattarolo*, the squeeze itself was sufficient to alert the police to the presence of drugs.

On the record before this Court, there is no evidence that Officer Martin performed any manipulation or further investigation of the object. He merely felt the object and based on that plain touch as part of a lawful pat search it appeared to him based on his experience and training that the object was a packet of crack

cocaine. The Court does not accept the proposition implicit in defendant's motion that any statement of the officer's reasonable belief about the nature of the object touched, which was initially described as an "inclination" rather than by the use of the magic words "immediately apparent," is *per se* constitutionally deficient. Again, looking back to the *Dickerson* decision, the Court stated that "the dispositive question before this Court is whether the officer who conducted the search was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in respondent's jacket was contraband." Id. at 377. Clearly the Dickerson Court is stating that the mental state of the officer must be one equivalent to having "probable cause," not absolute certainty. The Court finds that on the totality of circumstances, with the officer's observations, his training and experience, as well as his preliminary examination testimony and his declaration that he gave a single touch to the packet, that Officer Martin had sufficient reasonable cause to believe, reached by a lawful immediate use of his sense of touch, that the packet was drugs, and that it was lawful at that point to shake defendant's pants leg to retrieve the packet.

**IV. Conclusion**

For all of the reasons stated above, Defendant's Motion to Suppress is DENIED.

10

IT IS SO ORDERED

Dated:     December 5, 2008

_____
D. Lowell Jensen
United States District Judge